# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JUAN A. SANCHEZ-TORRES,**
          Petitioner,

    v.                                      Case No. 09-C-0715

**JUDY P. SMITH, Warden, Oshkosh
Correctional Institution,**
          Respondent.

---

## DECISION AND ORDER

Juan A. Sanchez-Torres seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In February 2006, he was convicted by a Wisconsin court of two counts of first-degree sexual assault of a child in connection with the sexual abuse of his two nephews, who were under the age of thirteen at the time of the abuse. Sanchez-Torres alleges that he is entitled to habeas relief because he was denied his right to effective assistance of trial counsel, in violation of the Sixth Amendment. He argues that his trial counsel made three errors: (1) failing to properly object to the admission of preliminary hearing testimony of one of the victims; (2) failing to object to the admission of statements the victims made to the police; and (3) stipulating to certain facts without first conducting an adequate investigation into the facts' accuracy.

## I. BACKGROUND

During the trial, Sanchez-Torres's nephews, Jesus (who went by the name Michael) and Antonio (who went by the name Tony), testified that Sanchez-Torres sexually abused them over a period of about two years. They testified that when they spent the night at his house he slept in the same bed as them. They testified that on numerous occasions he

touched their penises and anal areas with his hands and penis, and that he made them touch his penis. Each boy also testified that he saw Sanchez-Torres molest the other. Sanchez-Torres testified in his defense and denied his nephews' allegations. There was no physical evidence and no testimony from third parties saying they witnessed the abuse, and thus the question for the jury was to decide whom to believe – the boys or Sanchez-Torres.

The strategy of Sanchez-Torres's trial counsel was to attack the boys' credibility. He established that each boy's testimony was, at times, inconsistent with the other's, and that the boys' trial testimony was inconsistent with statements they gave to the police when they reported the abuse. Trial counsel also emphasized the inconsistent testimony by various witnesses about a sore that Michael supposedly had on his penis – which Michael said developed after Sanchez-Torres pinched his penis – and about Michael's visit to a doctor to determine whether he was exhibiting signs of sexual abuse.

The first error counsel is alleged to have committed is failing to properly object to the admission of Tony's preliminary hearing testimony. After defense counsel attacked the boys' credibility during cross-examination, the prosecutor informed the trial judge that she intended to introduce the preliminary hearing testimony as a prior consistent statement. The judge asked defense counsel whether he had any objection to the admission of the preliminary hearing testimony, and in response defense counsel said he did object but that he could not articulate any grounds for his objection. Based on counsel's failure to support the objection, the trial judge allowed the prosecutor to read Tony's preliminary hearing testimony to the jury. This testimony was both consistent and inconsistent with Tony's trial testimony. During closing arguments, defense counsel pointed to the inconsistencies

2

between Tony's trial and preliminary hearing testimony as a reason for believing Sanchez-Torres rather than the boys.

The second alleged error is counsel's failure to object to the testimony of Sergeant Michael Dooley regarding statements the boys made to him when they reported Sanchez-Torres's abuse. During the State's case, the prosecutor elicited testimony from Dooley about these statements, and defense counsel did not object. However, on cross-examination and again during closing arguments, defense counsel pointed out the numerous ways in which the boys' trial testimony was inconsistent with their statements to Dooley.

The final alleged error is counsel's stipulation to facts that a doctor would have testified to had the State called him as a witness. During the trial, the parties learned for the first time that the boys' grandmother had taken Michael to see a doctor after he had reported that he was being abused by Sanchez-Torres. The prosecutor attempted to locate this doctor to find out what he knew and have him testify at trial, if necessary. Eventually, the prosecutor was able to obtain notes from the doctor visit. After the parties and the judge examined the doctor's notes, and pursuant to the judge's suggestion, the parties agreed to stipulate to what the doctor would have testified to had he been called as a witness. The stipulation stated that Michael told the doctor that he did not feel safe, that Michael said that he had a history of sexual abuse by penile and anal means, and that the doctor did not find any physical evidence of abuse but noted that a lack of physical evidence of abuse is seen in a majority of cases. After Sanchez-Torres was convicted, post-conviction counsel learned that the doctor would not have testified that Michael told him that he did not feel safe and that he had a history of abuse by penile and anal means.

It turns out that it was Michael's grandmother, rather than Michael himself, who told the doctor these facts. Sanchez-Torres argues that trial counsel was ineffective for failing to conduct an investigation to verify the accuracy of the stipulation before agreeing to it.

Sanchez-Torres raised these three errors before the Wisconsin Court of Appeals, which affirmed the conviction after finding that Sanchez-Torres had not been prejudiced by any of trial counsel's alleged errors. In his petition for review in the Wisconsin Supreme Court, Sanchez-Torres raised only the first two alleged errors and did not complain about trial counsel's stipulation regarding the doctor visit. The Wisconsin Supreme Court declined review of the two issues Sanchez-Torres did raise.

In earlier proceedings in this case, respondent moved to dismiss Sanchez-Torres's claim based on trial counsel's stipulation regarding the doctor visit on the ground that Sanchez-Torres had procedurally defaulted this claim by failing to present it to the Wisconsin Supreme Court. In denying the respondent's motion to dismiss this claim, I determined that although Sanchez-Torres had procedurally defaulted the claim, he was arguing that his default should be excused in order to avoid a miscarriage of justice – i.e., because he was actually innocent. In accordance with <u>Dretke v. Haley</u>, 541 U.S. 386, 393-94 (2004), I determined that before I addressed Sanchez-Torres's claim of actual innocence I should first resolve his other ineffective-assistance claims on the merits. Thus, the issues before me now are the merits of Sanchez-Torres's first two ineffective-assistance claims and whether actual innocence excuses the default of his third ineffective-assistance claim.

## II. DISCUSSION

Because the Wisconsin courts resolved Sanchez-Torres's exhausted ineffective-assistance claims on the merits, I may grant his habeas petition only if the Wisconsin Court of Appeals's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1). A decision is "contrary to" established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an unreasonable application of Supreme Court precedent when the court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08.

The Supreme Court precedent relevant to the present case is Strickland v. Washington, 466 U.S. 668 (1984), and related cases governing claims of ineffective assistance of counsel. To prevail on an ineffective-assistance claim, Sanchez-Torres must show that his trial counsel's performance was deficient and that the deficient performance prejudiced his defense. Id. at 689-92. To show that counsel's deficient performance prejudiced his defense, Sanchez-Torres must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.

**A.     Failure to Object to Preliminary Hearing Testimony**

The first alleged instance of deficient performance is defense counsel's failure to meaningfully object to the admission of Tony's preliminary hearing testimony. As noted, after defense counsel cross-examined Michael and Tony and pointed out the various inconsistencies in their statements, the prosecutor sought to introduce Tony's testimony from the preliminary hearing. The prosecutor argued that this testimony constituted a prior consistent statement that was admissible under Wis. Stat. § 908.01(4)(a)2., which provides that a statement is not hearsay if "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . [c]onsistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." The prosecutor's position was that defense counsel had through cross-examination charged Tony with recent fabrication and that therefore the preliminary hearing testimony could be used to rebut the charge. Defense counsel seemed to agree that the testimony was admissible on this ground, but he nonetheless objected to the prosecution's request to use it, albeit without developing any argument as to why it was inadmissible. (Trial Tr. [Answer Ex. 9] at 3-6.) Because of defense counsel's failure to provide a reasoned objection, the court ruled that the testimony was admissible. The testimony was then read to the jury in question-and-answer form: the prosecutor read the questions, and a member of the prosecutor's staff read Tony's answers.[1]

---

[1]Sanchez-Torres describes this presentation as a "dramatic reading" of the preliminary hearing testimony, but I do not understand him to be arguing that the manner in which the testimony was read to the jury was improper.

During Sanchez-Torres's direct appeal, the Wisconsin Court of Appeals did not determine whether the preliminary hearing testimony was properly admitted under Wis. Stat. § 908.01(4)(a)2. Instead, it assumed that the testimony was not properly admitted and that defense counsel performed deficiently by failing to support his objection. However, the court determined that the failure to properly object to the preliminary hearing testimony was not prejudicial because, although the testimony was cumulative of Tony's trial testimony, it had impeachment value that defense counsel was able to exploit. Specifically, at trial Tony testified that Sanchez-Torres had molested him countless times over the course of two years, but at the preliminary hearing, Tony testified that there were only between two and four instances of abuse. (See Trial Tr. [Answer Ex. 11] at 70-71 .)

The Wisconsin Court of Appeals did not unreasonably apply Strickland in determining that defense counsel's failure to object to the admission of Tony's preliminary hearing testimony was not prejudicial. The court reasonably determined that the inconsistent portions of the testimony were useful for impeachment purposes. Although admission of the consistent portions of the testimony did not help the defense, neither was it particularly harmful. The consistent statements did not add anything to the State's case that Tony had not already provided during his trial testimony, and the mere repetition of Tony's testimony against Sanchez-Torres did not bolster its veracity.[2] Accordingly,

---

[2]That repetition does not bolster veracity can be seen by examining the case law interpreting the federal counterpart of Wis. Stat. § 908.01(4)(a)2. – Federal Rule of Evidence 801(d)(1)(B). The case law holds that a prior consistent statement is not admissible unless it was made before the declarant's motive to fabricate existed. See United States v. Harris, 761 F.2d 394, 399 (7th Cir. 1985). The reason for this is that the purpose of allowing admission of prior consistent statements is to rebut a charge of recent fabrication – i.e., to show that the declarant's present testimony is consistent with statements he made before his motive to fabricate existed. If the prior consistent

7

counsel's failure to properly object to the admission of the preliminary hearing testimony is not grounds for habeas relief.

**B.      Failure to Object to Statements to Police**

The second alleged instance of deficient performance is counsel's failure to object to portions of Sergeant Dooley's testimony about the statements Michael and Tony made to him when they reported the abuse. During direct examination and without objection from defense counsel, Dooley summarized his interview with Michael and Tony and even read statements from his police report. Most of the specific details he testified about were consistent with Michael and Tony's trial testimony and thus constituted prior consistent statements. However, some of the details that Dooley related had not been mentioned during the boys' testimony or during any other part of the trial. Other details that Dooley related were inconsistent with the boys' trial testimony, and these inconsistent statements formed a key part of defense counsel's closing argument. (Trial Tr. [Answer Ex. 11] at 64-69.)

Sanchez-Torres argues that defense counsel should have objected to all of the testimony concerning the boys' statements to Dooley other than the prior inconsistent statements on hearsay grounds. The Wisconsin Court of Appeals assumed that defense counsel's failure to do so was deficient performance, but it concluded that this error did not rise to the level of prejudice under Strickland. Regarding the prior consistent statements,

---

statement did not occur before a motive to fabricate existed, then the statement has no probative value because it merely shows that the declarant said the same thing at trial as he or she did on a prior occasion, and "mere repetition does not imply veracity." Id. (quoting United States v. McPartlin, 595 F.2d 1321, 1351 (7th Cir. 1979)). Thus, because Tony's consistent preliminary hearing statements were not made before any motive to fabricate arose, they did not bolster the veracity of his accusations.

8

the court found that since these statements merely repeated accusations the boys had made during their trial testimony, their admission was not prejudicial. I conclude that this determination was not an unreasonable application of Strickland for reasons similar to those discussed above in connection with the preliminary hearing testimony: although the admission of prior consistent statements not made before a motive to fabricate existed is not helpful to the defense, it is not prejudicial because mere repetition of testimony does not imply veracity.

I also conclude that the Wisconsin Court of Appeals reasonably determined that defense counsel's failure to object to the parts of the boys' statements to Dooley that described details of the abuse that the boys did not mention at trial was not prejudicial. Sanchez-Torres identifies four details about the abuse that were admitted through Dooley but not Michael and Tony's trial testimony. The first is Michael's statement that the first time Sanchez-Torres abused him, Sanchez-Torres put his finger in Michael's buttocks near his anus and rubbed it. The admission of this statement was not prejudicial because Michael testified at trial to a similar fact. Specifically, Michael testified that during the first incident, Sanchez-Torres touched Michael's buttocks with his hands and his penis. (Trial Tr. [Answer Ex. 8] at 90.) Although Sergeant Dooley added a bit of graphic detail to Michael's testimony about this incident by mentioning that Sanchez-Torres rubbed Michael's anus, this additional detail was not so prejudicial that there is a reasonable probability that had it been omitted the result of the trial would have been different.

The second detail which Sanchez-Torres claims Dooley related but the boys did not is that the last time Sanchez-Torres had sexual contact with Michael he pinched Michael's penis so hard that it left a mark. However, Michael testified during direct examination at

9

trial that Sanchez-Torres pinched his penis so hard that it left a mark. (Trial Tr. [Answer Ex. 8] at 103.) Although Michael did not precisely identify when this pinching occurred, Dooley's testimony about the time when it occurred could not possibly have prejudiced Sanchez-Torres's defense.

The third statement that Dooley testified about involved potential additional witnesses to the abuse. Dooley testified that Michael told him that on a couple of occasions two of his friends spent the night at Sanchez-Torres's apartment with him. Michael said that to his knowledge Sanchez-Torres did not abuse his friends, but that it was possible that his friends witnessed some of incidents involving Michael and Tony. Dooley added that his department tried to locate the two friends but were unsuccessful. I conclude that the admission of this part of Michael's statement to Dooley does not rise to the level of prejudice under Strickland. Although mentioning the possibility that two other boys may have observed Sanchez-Torres abuse Michael and Tony was somewhat prejudicial, I cannot say that this detail was so prejudicial that there is a reasonable probability that had it been excluded the result of the proceeding would have been different, much less that the Wisconsin Court of Appeals's conclusion that it was not was unreasonable.

The remaining detail admitted through Dooley was Michael's statement that he and Tony had talked about Sanchez-Torres's abuse, agreed that what was happening to them was wrong, and decided to report the abuse to a different uncle, Juan Morales. It is hard to see any way in which this statement prejudiced the defense. Juan Morales testified at trial and stated that he was the first person the boys approached about the abuse, and so Michael's statement to Dooley about the boys' agreement to tell Juan Morales added

nothing to the State's case.  The rest of Michael's statement – that the boys talked to each other about the abuse and agreed that it was wrong – was not prejudicial.

**C.     Doctor's Visit/Actual Innocence**

Sanchez-Torres's remaining claim is that defense counsel committed prejudicial error when he stipulated to facts the doctor would have testified to had he been called as a witness.  As discussed above and in my prior opinion in this case, Sanchez-Torres procedurally defaulted this claim when he failed to raise it in his petition for review in the Wisconsin Supreme Court.  However, he claims that he is actually innocent and that therefore I should reach the merits of this issue to avoid a fundamental miscarriage of justice.  To show actual innocence, a petitioner must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 537 (2006).  Moreover, for the claim of actual innocence to be credible, the petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).

In the present case, Sanchez-Torres has no "new reliable evidence" whatsoever, much less new evidence indicating that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  Rather, he rests on his own assertion of innocence and his claim that Tony and Michael are lying.  This is not sufficient to come within the actual innocence exception, and for this reason I conclude that he is bound by his procedural default.

In any event, even if I set aside the default and considered the merits of petitioner's claims, I could not grant habeas relief because counsel's alleged error does not rise to the level of prejudice under Strickland. The inaccurate fact in the stipulation was that Michael told the doctor that he was being sexually abused. It turns out that it was Michael's grandmother who told the doctor that Michael was being abused rather than Michael himself. This is not a trivial difference, but neither does it call the jury's finding of guilt into doubt. It was undisputed that by the time Michael was taken to see the doctor he had already reported his allegations of abuse to several adults, including his grandmother and uncle. Whether or not Michael also told his doctor that he was being abused does not substantially affect the credibility of his allegations. Thus, there is not a reasonable probability that, but for the inaccurate stipulation, the result of the proceeding would have been different.

**D.     Cumulative Effect of Counsel's Errors**

The Wisconsin Court of Appeals determined that the cumulative effect of defense counsel's alleged errors was not prejudicial within the meaning of Strickland. I conclude that this determination was not an unreasonable application of Strickland or any other Supreme Court precedent. As explained above, each of the individual errors were, at most, only slightly prejudicial. Aggregating the prejudice caused by these errors does not result in a reasonable probability that, but for the errors, the result of the proceeding would have been different.

### III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 31st day of May, 2011.

/s_____
LYNN ADELMAN
District Judge